## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DIERTRA A. PITTS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | |
| **BALTIMORE POLICE** | * | **Civil Action No. RDB-22-1404** |
| **DEPARTMENT,** | | |
| | * | |
| **Defendant.** | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

Plaintiff Diertra Pitts ("Pitts") brings this employment discrimination action against Defendant Baltimore Police Department ("BPD"), alleging retaliation (Count One) and hostile work environment (Count Two) in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), retaliation under 42 U.S.C. § 1983 (Count Three), and retaliation in violation of the Maryland Fair Employment Practices Act ("MFEPA"), Md. Code Ann., State Gov't, § 20-601 et seq. (Count Four). (Compl., ECF No. 1 at ¶¶ 62-119.) Pitts is a former Detective Sergeant at BPD who claims she was forced to retire after enduring years of ongoing retaliation resulting from her refusing to unethically change "guilty" findings on BPD Equal Employment Opportunity complaints and filing internal and external employment complaints. (Compl., ECF No. 1 at ¶¶ 14, 52; EEOC Charge 1, ECF No. 5-5.) In the operative complaint, she alleges that she was the victim of retaliation, forced to endure a hostile work environment, and deprived of her property, liberty, and due process rights based on the conduct of others at BPD. (*Id.* ¶¶ 62-119.)

Now pending is BPD's Motion to Dismiss. (ECF No. 5.) In support of this motion, BPD contends that Pitts' instant complaint was untimely filed, that her EEOC Charge giving rise to the complaint was untimely filed, that her complaint exceeded the scope of her EEOC Charge, that she did not allege facts sufficient to state claim entitling her to relief under Title VII, 42 U.S.C. § 1983, or MFEPA, that her MFEPA claims are time barred, and that BPD is immune from MFEPA claims in federal court. (Def's Mem. Supp. Mot. Dismiss, ECF No. 5-2 at 9-23; Def's Repl. Supp. Mot. Dismiss, ECF No. 10 at 2-16.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, BPD's Motion to Dismiss (ECF No. 5) is **GRANTED** as to Counts One, Three, and Four, and **DENIED** as to Count Two**.**

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Plaintiff is an African American woman formerly employed by Defendant BPD. (Compl., ECF No. 1 ¶ 14.) She was hired by BPD on March 20, 1987, and reached the rank of Detective Sergeant. (*Id.* ¶¶ 14, 20.) From 2010 until 2020, she worked in BPD's Equal Employment Opportunity Department ("EEO"). [1] (*Id.* ¶ 20.)

---

[1] Pitts' Complaint merely references her position as within the "EEO" without defining or explaining the significance of that acronym. According to the Baltimore Police Department's current organizational chart, there is an "Equal Opportunity & Diversity Section." Baltimore Police Department, *About the Department Organizational Chart*, https://www.baltimorepolice.org/about/about-department/organizational-chart (last visited Apr. 26, 2023). As Plaintiff's position within the "EEO" was between 2010-2020, and might no longer exist under the current organizational chart, the Court presumes EEO to mean "Equal Employment Opportunity" for purposes of this Motion, but directs Plaintiff to provide more clarity in her subsequent filings.

While working in that department, Plaintiff investigated complaints made against BPD members. (*Id.*) On two occasions sometime before January 23, 2014, Plaintiff was "ordered" to change "Guilty" EEO complaint findings against Major Dombrowski and Deputy Major Rutherford to reflect "Not Guilty", but refused to do so. (*Id.* ¶¶ 21-23.) After she refused to change the guilty findings, Plaintiff claims that she "began to be the target" of retaliation from "Chief Hill, Director Laura Giantris, and Lieutenant Jason Yerg . . .," and eventually filed an EEOC Charge on January 23, 2014, which was subsequently dismissed in March 2015. (*Id.* ¶ 24-25.)

In 2015, BPD Detective Chawntay Willie ("Willie") experienced two medical emergencies which required transportation to the emergency room. (Compl., ECF No. 1 ¶ 26.) On the first occasion, Detective Alexi Correa ("Correa") accompanied Willie with her personal belongings, which included her personal weapon. (*Id.*) Correa returned Willie's belongings, including her firearm, after returning from the emergency room without being disciplined. (*Id.*) On the second occasion, Plaintiff accompanied Willie. (*Id.* ¶ 27.) Before leaving for the emergency room, Lieutenant Callaghan ("Callaghan") inquired as to Willie's firearm and instructed Plaintiff to secure it in a gun box. (*Id.*) Plaintiff did not do so because it was Willie's personal weapon. (*Id.* ¶¶ 31-32.) Callaghan subsequently came to the hospital and secured the weapon from Willie's husband. (Compl., ECF No. 1 ¶¶ 31-32.)

Following the second incident, Callaghan charged Pitts with insubordination and failing to follow a direct order. (*Id.*) Pitts alleges that she was disparately treated for the same behavior as her colleague, Correa. Nevertheless, a BPD Trial Board later found Pitts guilty on both charges although Callaghan recanted his previous statements and testified that he did not give

her a direct order. (*Id.*) Plaintiff also claims she later learned that Major Chris Jones asked to be removed from the Trial Board because "the Board had been ordered to find her guilty which he could not in good conscience do." (*Id.* ¶ 33.) After hearing this, Plaintiff filed a complaint with the Maryland Commission on Civil Rights ("MCCR") on May 13, 2015. (*Id.* ¶ 34.)[2]

Over the next two years, Plaintiff was involuntarily detailed to different departments within BPD and twice faced disciplinary charges. (*Id.* ¶¶ 36-40.) First, in "early 2017" she was charged with a failure to send a text notification to Lieutenant Hall regarding a crime that occurred overnight, but the charges were dismissed because this failure was found to be Lieutenant Hall's responsibility. (*Id.* ¶ 40.) Subsequently, during Spring 2017, Plaintiff was charged with having files from a previous assignment locked in her EEO office. (Compl., ECF No. 1 ¶ 41.) Plaintiff later alleges that she was advised that her punishment would be involuntary transfer, however she was never transferred. (*Id.* ¶ 42.)

Following these incidents, Plaintiff alleges she continued to endure hostile conduct. Specifically, sometime during in June 2017, Plaintiff overheard a conversation during which two Sergeants discussed "Lt. Mahoney coming to the midnight shift to 'target Plaintiff.'" (*Id.* ¶ 43.) Plaintiff filed another EEOC Charge in response to hearing this conversation, but nevertheless was required to work with Mahoney for the following six months. (*Id.* ¶ 44.) During this period, she was issued poor performance reviews without documented support, accused of violating policy when others weren't disciplined for similar conduct, and asked threatening questions by her colleagues. (*Id.* ¶¶ 44-46.) Particularly, Sergeant Frieman allegedly

---

[2] Pitts' Complaint (ECF No. 1) does not address the outcome of her MCCR filing.

asked her whether she feared being killed in the same manner as a former BPD officer who was found dead before testifying in a case involving the Gun Trace Task Force. (*Id.* ¶ 46.) Accordingly, during November 2018, Plaintiff decided to take medical leave because of the "extreme emotional distress" she suffered during the previous years. (Compl., ECF No. 1 ¶ 46.) Pitts alleges that her mental health was so severely affected that she was entitled to twenty-four months of leave because her condition was considered a Line of Duty injury. (*Id.* ¶¶ 47-48.)

Plaintiff attempted to return to BPD in December 2019, but was told by Major James Rhoden ("Rhoden") that it was too late and that she would be medically suspended. (*Id.* ¶ 50.) Rhoden then issued a notification letter informing Pitts that she must retire within ninety days. (*Id.* ¶ 51.)  According to the Complaint, after years of pushback from BPD, Pitts "felt forced to complete her retirement paperwork in March 2020." (*Id.* ¶ 52.) She travelled to BPD to return her equipment on June 19, 2020, but was told that she had been terminated in May 2020. (*Id.* ¶ 53.) However, BPD promptly remedied the error after being informed that Pitts timely submitted her retirement documents. (Compl., ECF No. 1 ¶ 55.) Nevertheless, Plaintiff filed another EEOC Charge against BPD on February 4, 2021, alleging "years of retaliation and harassment that she was forced to endure at the hands of BPD leadership." (*Id.* ¶ 57.) In her EEOC Charge, she stated that "[a]s a result of filing a Charge of Discrimination (531-2017-01739), and filing an internal complaint of harassment, [she had been] subjected to ongoing retaliation." (EEOC Charge 1.)[3]  She additionally alleged that "[a]lthough [she]

---

[3] Pitts did not make clear in EEOC Charge or Complaint whether "Charge of Discrimination (531-2017-01739)" refers to her 2014 or 2017 EEOC Charge. However, for the purposes of timeliness discussed *infra*, both occurred long before the 300 day time period.

wanted to return to [her] job [she] was forced into retirement by Major Rhoden." (EEOC Charge 1.)

According to Pitts, "[o]n March 9, 2022, the Equal Employment Opportunity Commission ("EEOC") issued Plaintiff a Right-to-Sue Letter[4] through the EEOC electronic portal." (*Id.* ¶ 9.) Plaintiff further notes that "[o]n March 31, 2022, after noting that Plaintiff had not viewed the Right-to-Sue, the EEOC mailed Plaintiff her Right-to-Sue Letter which Plaintiff received on April 11, 2022." (*Id.*) Accordingly, Plaintiff filed the instant Complaint with this Court on June 6, 2022, ninety-one days after the EEOC issued Plaintiff's Right-to-Sue Letter. (ECF No. 1.) In response to the Complaint, Defendant filed a Motion to Dismiss. (ECF No. 5.)

## STANDARD OF REVIEW

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of

---

[4] The EEOC issues a claimant a Right-to-Sue Letter after it closes its investigation and declines to bring a formal charge against the accused party, or "if, within 180 days after a charge is brought, the [EEOC] has neither filed suit in its own name nor achieved a private settlement." *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982) (citing 42 U.S.C. s 2000e-5(f)(1)). To initiate suit in this Court, a plaintiff must be entitled to a Right-to-Sue Letter. *Id.* ("it is entitlement to a 'right to sue' notice, rather than its actual issuance or receipt, which is a prerequisite to the jurisdiction of the federal courts").

action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

While ruling on a motion to dismiss, a court's evaluation is generally limited to allegations contained in the complaint. *Goines*, 822 F.3d at 166-67. However, courts may also consider documents explicitly incorporated into the complaint by reference. *Id.* at 166 (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). In addition, a court may "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Id.* (citing *Sec'y of State for Defence v. Trimble Nav. Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Considering such documents does not convert a motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Accordingly, this Court shall take notice of the documents submitted in connection with Pitts' EEOC Charge filed on February 4, 2021, (ECF No. 5-5) while construing Defendant's motion as a motion to dismiss. *See Dethridge v. Esper*, No. GLR-20-606, 2021 WL 1751120 (D. Md. May 4, 2021) ("Courts in this district have routinely

determined that EEO documents . . . are integral documents in employment discrimination actions.").

## ANALYSIS

Defendant moves to dismiss all four Counts in Plaintiff's Complaint for alternative and complementary reasons. (ECF No. 5.) BPD first argues that Plaintiff's claims are untimely filed according to EEOC statutory language and precedent. (ECF No. 5-2 at 10.) Defendant additionally argues that Plaintiff's claims impermissibly reach beyond the scope of the content within her EEOC charge(s) thereby barring reliance on those extraneous instances. (*Id.* at 14.) Finally, BPD asserts that Plaintiff has failed to state a plausible cause of action as to each Count in Plaintiff's Complaint. (*Id.* at 16.) Each argument is addressed in turn.

### I.  Timeliness

Defendant argues that Plaintiff's Complaint was untimely because she filed the complaint beyond the ninety-day filing period. After filing charges with the EEOC, the commission may provide a notice of a right to sue the respondent named in the charges. 42 U.S.C. § 2000e–5(f)(1). "*Within ninety days after the giving of such notice* a civil action may be brought against the respondent named in the charge." *Id.* (emphasis added). Accordingly, "[c]ourts have . . . held that failure to file suit within ninety days after receipt of a notice from the EEOC renders a plaintiff's action untimely." *Harris v. Norwood Sch.*, No. CV CBD-19-1668, 2019 WL 6052686, *2 (D. Md. Nov. 15, 2019) (quoting *Fisher v. Maryland Dept. of Hous. and Cmty. Dev.*, 32 F. Supp. 2d 257, 264 (D. Md. 1998)). However, this time limit is not a jurisdictional limit and is instead treated like a statute of limitations. *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 426 (D. Md. 2013) (citing *Chacko v. Patuxent Inst.*, 429 F.3d 505, 513 n.5 (4th Cir. 2005)).

Therefore, it is subject "to waiver, estoppel, and equitable tolling" under certain circumstances. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

The Fourth Circuit does not require actual notice to trigger the ninety day filing period. *Harvey v. New Bern Police Dep't*, 813 F.2d 652, 653-54 (4th Cir. 1987). Instead, a claimant may receive notice if, for example, a competent individual receives notice on their behalf or if they receive a notification that a notice letter is available. *Id.* Accordingly, before determining that an equitable tolling of the filing period is appropriate, courts conduct a case-by-case examination. *Id.* Specifically, "courts should conduct *a thorough examination of the facts* to determine if reasonable grounds exist for an equitable tolling of the filing period." *Id.* at 654 (emphasis added). Therefore, even without actual notice, a claimant may be found to have received notice if, for example, the post office provides notice that a letter is available for the claimant. *Weathersbee*, 970 F. Supp. 2d at 427.

Courts in this circuit have extended this concept to the email context, holding an email notification that an online letter is available can provide notice. *Walker-Bey v. Gabrowski*, No. CV 1:22-361-SAL-SVH, 2022 WL 16700446, at *2 (D.S.C. July 5, 2022) (quoting *Wolfe v. Wps Health Sols., Inc.,* C/A No. 4:20-175, 2021 WL 1992027, at *3 (E.D. Va. Apr. 7, 2021), report and recommendation adopted, C/A No. 4:20-175, 2021 WL 1991259 (E.D. Va. May 18, 2021)) (holding that notice occurred, and therefore the ninety day filing period was triggered, upon "delivery of a notice of right to sue via email."); *Stewart v. Johnson*, 125 F. Supp. 3d 554, 559-60 (M.D.N.C. 2015) ("Final agency decisions transmitted via email can satisfy the notice requirement."); *Ward v. Comm'r of Soc. Sec.*, No. CIV. WDQ-11-1004, 2012 WL 122412, at *4 (D. Md. Jan. 12, 2012), *adhered to on reconsideration*, No. CIV. WDQ-11-1004, 2012 WL 893256

(D. Md. Mar. 14, 2012) (finding that a final agency decision sent via email triggered the ninety day filing period for an employment discrimination claim). Accordingly, under the case-by-case analysis, a claimant may receive notice of their right to sue letter upon receipt of an email stating that the letter is available, thus triggering the ninety day filing period. The ultimate virtue of the rule is that "claimants [must] act expeditiously, without unnecessary delay." *Harvey*, 813 F2d at 654.

In the current case, Defendant argues that Plaintiff's complaint was untimely because the EEOC issued the letter on March 9, 2022, therefore triggering the ninety-day filing period, and Plaintiff filed the instant complaint on June 8, 2022, ninety-one days later. 42 U.S.C. § 2000e–5(f)(1). Specifically, Defendant claims that Plaintiff was notified of the letter via the EEOC electronic portal. (Def's Mot., ECF No. 5 at 9-10.) Plaintiff agrees that the EEOC issued the letter on March 9, 2022, and further alleges that her complaint was timely because "[o]n March 31, 2022, after noting that Plaintiff had not viewed the Right-to-Sue, the EEOC mailed Plaintiff her Right-to-Sue Letter which Plaintiff received on April 11, 2022." (Compl. ¶ 9.) Ultimately, because there is ambiguity as to when Plaintiff received notice, this Court will apply the "flexible rule" announced in *Harvey* and find that Plaintiff timely filed the instant complaint on June 8, 2022, ninety-one days after the EEOC issued the electronic letter. 813 F.2d at 654. By missing the deadline by just one day, it is clear that Pitts did not "unnecessary[ily] delay" filing the instant complaint. *Id.* Accordingly, reasonable grounds exist for an equitable tolling of *one day* and the Complaint shall be deemed to have been timely filed. This Court will proceed to determine what may be considered within the scope of Pitts' claims.

## II.  Scope of EEOC Charge

This Court will consider allegations occurring beyond the 300-day EEOC filing window because Pitts alleges that she had to endure ongoing retaliation and a hostile work environment during her employment with BPD. "Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC." *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 384-85 (4th Cir. 2022) (quoting *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002)). "In Maryland, a charging party must file an EEOC Charge within 300 days of the alleged unlawful employment practice." *Van Slyke v. Northrop Grumman Corp.*, 115 F. Supp. 2d 587, 592 (D. Md. 2000), *aff'd*, 17 Fed. Appx. 154 (4th Cir. 2001) (citing 42 U.S.C. § 2000e–5(e)(1)).[5] Accordingly, as determined by the United States Supreme Court, claims of "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). However, the Supreme Court also recognized that for hostile work environment claims, "[t]heir very nature involves repeated conduct" and the unlawful employment practice may "occur[] over a series of days or perhaps years." *Id.* at 115. Therefore, so long as "an act contributing to the claim occurs" within the 300-day period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117.

---

[5] Generally, a Charge of Discrimination must be filed with the EEOC within 180 days of when the unlawful employment practice occurred, but if the relevant state is a deferral state, that period is 300 days. 42 U.S.C. § 2000e–5(e)(1). Maryland is a deferral state, meaning it is one with "a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof." 42 U.S.C. § 2000e-5(e)(1).  Maryland is classified as a deferral state due to the Maryland Commission on Human Relations (MCHR), a state agency that is capable of providing relief from discrimination. Accordingly, the appropriate filing period for this case is 300 days.

Defendant argues that this Court should not consider any allegations predating April 10, 2020—300 days before Plaintiff's most recent EEOC charge was filed in February 4, 2021. However, in the 2021 EEOC Charge and the instant Complaint, Pitts claims that she was discharged on June 19, 2020, when she was informed of her termination. (Compl. ¶¶ 52-60; EEOC Charge 1.) According to her, she was informed that she was terminated despite acquiescing and adhering to Rhoden's instructions that she must retire before July 1, 2020. (Compl., ECF No. 1 at ¶¶ 52-60; EEOC Charge 1.) Although BPD remedied this error, Pitts' alleged termination on June 19, 2020, is the most recent "unlawful employment practice." This fell within the period of Discrimination identified in her EEOC Charge and within the 300-day period required for EEOC Charges.[6] *See Hammoud v. Jimmy's Seafood, Inc.*, No. CV GLR-21-1593, 2022 WL 3027861, at *4–5 (D. Md. Aug. 1, 2022) (Russell, III, J.); 42 U.S.C. § 2000e–5(e)(1). (EEOC Charge 1.) Accordingly, the Court may consider the "entire time period of the [alleged] hostile environment" because the unlawful employment practice occurred within the 300-day window. *Morgan*, 536 U.S. at 117; *Hammoud*, 2022 WL 3027861 at *4 (finding that courts may consider "allegations or evidence supporting their claims of protected activity, discriminatory or retaliatory animus, or causation that occurred prior to the 300-day window" if the unlawful employment practice occurred within the 300-day window).

The Baltimore Police Department also incorrectly argues that only facts pertaining to Rhoden preventing Plaintiff from returning to work should be considered in this case because

---

[6] Plaintiff alleges that she discovered she had been terminated on June 19, 2020, but that she was "informed that she had been terminated in May 2020" at BPD Headquarters. (Compl. ¶ 53.) Because each date happened beyond April 10, 2020, this Court concludes that the most recent "unlawful employment practice" occurred within the 300-day period required for EEOC Charges.

not every allegation of discrimination later mentioned in the Complaint was specifically described in her EEOC Charge. (Def's Mot., ECF No. 5 at 13-14.) The administrative step of filing an EEOC Charge of Discrimination functions to put employers on notice of alleged violations and encourage resolution outside of the courts. *Cowgill*, 41 F.4th at 385. The allegations in administrative charges normally serve to limit the scope of any subsequent civil proceedings that may arise. *Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022); *Chacko v. Patuxent Inst., 429 F.3d 505*, 509 (4th Cir. 2005) ("[F]actual allegations made in formal litigation must correspond to those set forth in the administrative charge.") However, "if a plaintiff's claims in her judicial complaint are reasonably related to her EEOC Charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit." *Cowgill*, 41 F.4th. at 384 (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000)). Additionally, courts construe administrative charges liberally, as they are not normally completed by lawyers. *Chacko*, 429 F.3d. at 509.

To determine what may be considered in this case, this Court must first decide whether all the allegations in Pitts' complaint are "reasonably related" to her EEOC Charge. As previously stated, Defendant argues that all allegations prior to Rhoden preventing Plaintiff from returning to work should not be considered in this case because she "describes discrete acts (prevented from returning to work, terminated and then reinstated to retire)." (Def's Mot., ECF No. 5 at 13.) Defendant also accurately notes that Plaintiff did not fill in the "Continuing Action" box on the 2021 Charge. (EEOC Charge 1.) However, Defendant ignores that Plaintiff specifically mentioned her two preceding employment complaints, and alleged that she was subjected to "ongoing retaliation" in the "Particulars" section of the EEOC Charge.

(*Id.*) Viewed in the light most favorable to the Plaintiff, this suggests that Pitts described a string of ongoing occurrences rather than the single, discrete event of not being allowed to return to work in her EEOC Charge. *Cowgill*, 41 F.4th. at 384 (quoting *Smith*, 202 F.3d at 247–48). Accordingly, as these allegations are reasonably related to the events described in the Complaint, all facts alleged in the Complaint will be considered while examining the Defendant's contentions in its Motion to Dismiss.

### III.   Pleading Sufficiency

Defendant also argues that Plaintiff has failed to plausibly state a claim for relief as to each of the Counts in the Complaint. (ECF No. 5-2 at 16.) As to her retaliation claims under Title VII (Count One), 42 U.S.C. § 1983 (Count Three), and MFEPA (Count Four), Pitts has failed to properly allege a causal connection between her protected activity and the adverse employment action she suffered, and those claims must be dismissed. However, she has sufficiently alleged facts to sustain her hostile work environment (Count Two) claim, which will proceed to discovery. Plaintiff's claims are grouped and addressed accordingly.

### A.   Retaliation in Violation of Title VII of the Civil Rights Act (Count One), 42 U.S.C. § 1983 (Count Three), and MFEPA (Count Four)[7]

Pitts has not plausibly pled her retaliation claims because she has not sufficiently alleged facts to show a causal connection between her protected activity and the adverse employment action she endured. Title VII of the Civil Rights Act makes it unlawful "for an employer to

---

[7] The elements to establish a claim under Title VII, 42 U.S.C. § 1981 and 1983, and MFEPA are the same, and will be discussed in tandem. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n. 1 (1993)); *Nana-Akua Takyiwaa Shalom v. Payless Shoesource Worldwide, Inc.*, 921 F. Supp. 2d 470, 484 n.20 (D. Md. 2013).

discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e-3; see also 42 U.S.C. § 12203(a). To allege retaliation in violation of Title VII, the plaintiff must allege "(1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that there was a causal link between the two events." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005). However, to survive a motion to dismiss, "a plaintiff is not required to plead facts that constitute a prima facie case." *Sillah v. Burwell*, 244 F. Supp. 3d 499, 511 (D. Md. 2017) (quoting *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)). "The prima facie case is an evidentiary standard that must be met at trial, not a pleading requirement." *Ingleson v. Burlington Med. Supplies, Inc.*, 141 F. Supp. 3d 579, 584 (E.D. Va. 2015) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002)). Nonetheless, a plaintiff must still allege "facts sufficient to state a claim entitling her to relief." *Id.* (quoting *Harman v. Unisys Corp.*, 356 Fed.Appx. 638, 640 (4th Cir.2009)).

a) *Protected Activity*

A plaintiff may engage in a protected activity by "opposing a practice prohibited under Title VII." *Pitter v. Cmty. Imaging Partners, Inc.*, 735 F. Supp. 2d 379, 395 (D. Md. 2010) (Chasanow, J.). Specifically, "[c]omplaints raised through internal . . . procedures are recognized as protected activity." *Roberts v. Glenn Indus. Group, Inc.*, 998 F.3d 111, 122 (4th Cir. 2021). In this case, Plaintiff has provided four instances during the relevant time period in which she engaged in protected activity and therefore satisfied the first element: (1) filing an internal complaint after refusing orders to change guilty findings in internal EEO investigations sometime before January 23, 2014, (2) filing an EEOC Charge on January 23,

2014, (3) filing a MCCR complaint on May 13, 2015, and (4) filing an EEOC Charge sometime during June 2017. (Compl., ECF No. 1 at ¶¶ 24, 34, 44, 64.)

*b)  Adverse Action*

The second element of a Title VII retaliation claim requires the defendant to engage in adverse action against the plaintiff. *Rodgers v. Eagle All.*, 586 F. Supp. 3d 398, 446 (D. Md. 2022). In a retaliation case, the scope of potential adverse actions "is not limited to discriminatory actions that affect the terms and conditions of employment," *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006), but there still must be "some direct or indirect impact on an individual's employment." *Rodgers*, 586 F. Supp. 3d at 446 (quoting *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 431 (4th Cir. 2015)). Pitts has plead that she endured an adverse employment action when she was prematurely terminated, albeit erroneously. (Compl., ECF No. 1 at ¶¶ 50-54.) Instead of being allowed to return to work following leave, Pitts was refused her position of employment and told she was no longer welcome where she had spent more than thirty years. (Compl. ¶¶ 17, 50-54.) Such action precisely affected the "terms and conditions" of her employment, as her employment was terminated. Accordingly, the second element is satisfied.

*c)  Causal Connection*

To satisfy the third element of a Title VII retaliation claim, the plaintiff must establish a causal connection between their protected activity and the employer's adverse action. *Navy Fed. Credit Union*, 424 F.3d at 405–06. Establishing a causal connection "is not an onerous burden." *Strothers v. City of Laurel*, 895 F.3d 317, 335 (4th Cir. 2018). Nonetheless, a claimant must establish that their employer had knowledge of the protected activity when the retaliation

16

occurred. *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 410-11 (4th Cir. 2013); *Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006) (stating that relevant officials must have knowledge that a claimant filed administrative complaints when the alleged retaliation occurred). In this case, Pitts has failed to allege any facts that would lead to a conclusion that Major Rhoden was aware of her administrative complaint history before telling her it was "too late" to return to full duty. (Compl., ECF No. 1 at ¶ 50.) Pitts simply indicates that Rhoden was her point of contact upon finding that she was being forced to retire, and that he issued her the accompanying administrative documents. (*Id.* at ¶¶ 50-51.) Furthermore, Pitts failed to include facts that identify the individual who ordered her erroneous termination, and whether this person was aware of her history of protected activity.

A plaintiff may also establish a causal connection between her protected activity and the employer's subsequent adverse employment action by alleging facts that indicate the adverse acts were within "sufficient temporal proximity" to the protected activity. *Roberts*, 998 F.3d at 123 (quoting *Johnson v. United Parcel Serv., Inc.*, 839 Fed. Appx. 781, 783-84 (4th Cir. 2021)) (internal quotations omitted). Specifically, "[a]n adverse action that bears sufficient temporal proximity to a protected activity may, along with the existence of other facts, suggest that the adverse employment action occurred because of the protected activity." *Id.* at 126. Courts in the Fourth Circuit do not adhere to a "bright-line rule" to determine sufficient temporal proximity. *Id.* at 127. However, courts have found that claimants fail to establish a causal connection if a number of months passed between their protected activity and the alleged adverse employment action. *See e.g., Pascual v. Lowe's Home Centers, Inc.*, 193 Fed. Appx. 229, 233 (4th Cir. 2006) (finding "three to four months" too long to establish a causal

connection exclusively through temporal proximity); *see also Thornton v. Dep't of Pub. Safety & Corr. Services*, No. CV ADC-16-3028, 2019 WL 1118064, at *11 (D. Md. Mar. 11, 2019) (determining that a nearly seven-month lapse between termination and filing a charge of discrimination was too long to establish a causal connection).

In this case, Pitts was erroneously terminated approximately three years after she last engaged in a protected activity. (Compl., ECF No. 1 at ¶¶ 44, 53.) This lapse in time is significantly longer than in cases where it was determined too much time had passed to establish a causal connection between protected activity and adverse employment action. *Pascual*, 193 Fed. Appx. at 233; *Thornton*, 2019 WL 1118064 at *11. Therefore, Pitts has failed to establish a causal connection through "sufficient temporal proximity." *Roberts*, 998 F.3d at 123. Accordingly, as Pitts has failed to plausibly allege a causal connection between her state and federal employment complaints and her forced firing, her retaliation claims (Counts One, Three, and Four) are DISMISSED WITH PREJUDICE.

B.  Hostile Work Environment Under Title VII of the Civil Rights Act (Count Two)

Pitts' hostile work environment may proceed as she properly alleged facts which would indicate that she was forced to endure severe, unwelcome conduct imputable to BPD.  To state a claim for hostile work environment under Title VII, the plaintiff must plausibly allege that there was "'(1) unwelcome conduct; (2) that is based on the plaintiff's ... race, [color, sex, religion, or protected activity]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Grady v. McCarthy*, No. CV ELH-17-1141, 2018 WL 3105769,

*22 (D. Md. June 22, 2018) (quoting *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015).

    *a)  Unwelcome Conduct*

    A plaintiff need not allege severely unwelcome conduct for a Court to determine the first element of a hostile work environment claim has been met. *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 329 (4th Cir. 2018) ("The first element of a hostile environment claim, unwelcome conduct, is not a high hurdle."). Indeed, "simply voicing [an] objection" can indicate that certain conduct was unwelcome, and the degree of severity is "better addressed under the third element, pervasiveness." *Id.*  In this case, Pitts' filing of formal complaints with state and federal employment authorities in response to "harassment," and the subsequent allegedly unwarranted charges and involuntary detailing clearly illustrate that such conduct by her superiors was unwelcome. (Compl. ¶¶ 24, 31, 34, 44.) Accordingly, the first element is satisfied.

    *b)  Based on Protected Activity*

    Upon sufficient pleading of the first element, a plaintiff must then show that the unwelcome conduct was "because the plaintiff engaged in a protected activity" to satisfy the second element. *Angelini v. Baltimore Police Dep't*, 464 F. Supp. 3d 756, 789 (D. Md. 2020) (quoting *Dowe v. Total Action Against Poverty*, 145 F.3d 653, 657 (4th Cir. 1998)). A plaintiff's protected activities need not be determined the but-for causes of the alleged unwelcome conduct, but nonetheless there must still be some showing of causation. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 214 (4th Cir. 2019) (citing *Strothers*, 895 F.3d. at 335). "For example, a plaintiff may establish causation by showing that '(1) the employer either understood or should

have understood the employee to be engaged in protected activity and (2) the employer took adverse action against the employee soon after becoming aware of such activity.'" *Id.* (citing *Strothers*, 895 F.3d. at 335-36).

Here, Pitts has sufficiently alleged that her superiors engaged in unwelcome conduct because she refused orders to improperly change EEO findings, filed the 2015 MCCR complaint, and later filed the 2017 EEOC Charge. (Compl. ¶¶ 24, 34, 44.) Specifically, in Pitts alleges that in response to refusing to change EEO findings, she became the target of harassment by her superiors. (Compl. ¶ 24.) Furthermore, after she filed the MCCR complaint, Pitts alleges that she was involuntarily reassigned within BPD. (Compl. ¶ 34.) Finally, she alleges that she was forced to work with the individual who was the subject of her 2017 EEOC Charge despite voicing her concern. (Compl. ¶ 44.) Therefore, Pitts has satisfied the second element.

c)   *Sufficiently Severe or Pervasive Conduct Imputable to Employer*

To satisfy the third and fourth elements, a plaintiff must show that a defendant's conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *Boyer-Liberto*, 786 F.3d at 277. Such conduct "must be both objectively and subjectively offensive, [such] that a reasonable person would find it hostile or abusive, and . . . the victim in fact did perceive [it] to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). In conducting this analysis, courts consider "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted," among other

things, to determine if conduct was sufficiently severe or pervasive. *Conner v. Schrader-Bridgeport Intern., Inc.*, 227 F.3d 179, 193 (4th Cir. 2000) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)); *see also Harris*, 510 U.S. at 22 ("This is not, and by its nature cannot be, a mathematically precise test.")). However, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Importantly, the conduct must be imputable to the employer, which may be established via supervisor harassment. *Strothers*, 895 F.3d. at 332-333 (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 431 (2013)).

In this case, Pitts has sufficiently alleged that the conduct she faced by was sufficiently severe or pervasive, and imputable to the Defendant, to support finding a hostile work environment. Primarily, Pitts has alleged that the environment she endured caused her emotional distress and affected her mental health such that she took medical leave. (Compl., ECF No. 1 at ¶ 47.) Indeed, the conduct constituting the environment was so severe that it entitled her to, according to the Complaint, twenty-four months of medical leave. (*Id.* ¶ 48.) Additionally, Pitts was forced to work for a superior who allegedly intended to "target" her, and alongside a co-worker who suggested she should fear for her life while conducting her daily routine. (*Id.* ¶¶ 42-46.) Specifically, Pitts' colleague asked whether she was "worried that [she would] be the next [BPD officer found dead under mysterious circumstances.]" (*Id.* ¶ 46.) Such an environment is certainly one "that a reasonable person would find [] hostile." *Faragher*, 524 U.S. at 787. Moreover, although Pitts does not include specific facts as to the continuing nature of the relevant unwelcome conduct, she sufficiently alleges instances, like the comment described above, which illustrate the severity and pervasiveness of the conduct she was forced

to endure. She describes being the target of harassment, being involuntarily detailed, and subject to unwarranted disciplinary charges. (Compl., ECF No. 1 at ¶¶ 24, 34, 44.) Importantly, Pitts properly alleges that the unwelcome conduct was by outranking officers during the relevant time period, and therefore imputable to BDP. (*Id.* at ¶¶ 24, 31, 40, 47, 50.)

Furthermore, while involuntary transfers or reassignments are normally not considered adverse employment actions in the retaliation context, the frequency with which Pitts was obliged to change her role indicates that her work environment had become increasingly unstable. *See Hemphill v. United Parcel Serv., Inc.*, 975 F. Supp. 2d 548 (D.S.C. 2013) (citing *James v. Booz–Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004)). The Complaint suggests that Pitts proceeded smoothly through the ranks of BPD for approximately twenty-five years before she was first met with issues for not changing "Guilty" EEO findings. (Compl., ECF No. 1 at ¶¶ 20-24.) Thereafter, she was transferred three times, and often denied the opportunity to have meetings to discuss these personnel decisions. (*Id.* at ¶¶ 36-41.) Accordingly, Pitts has sufficiently alleged incidents in which her superiors engaged in unwelcome conduct, and such incidents were sufficiently severe or pervasive to satisfy the third and fourth elements in a hostile work environment claim. As Plaintiff has sufficiently plead all four elements to a hostile work environment claim, such claim may proceed to discovery.

## CONCLUSION

For the foregoing reasons, BPD's Motion to Dismiss (ECF No. 5) is hereby **GRANTED IN PART** and Plaintiff's claims for retaliation in Counts One, Three, and Four

are **DISMISSED WITH PREJUDICE**. Defendant's Motion is **DENIED IN PART**, and

Plaintiff's hostile work environment in Count Two shall proceed to discovery.

     A separate order follows.


<u>April 28, 2023</u>                          _____/s/_____

Date                                       Richard D. Bennett

                                          United States District Judge